# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHAWNETTE L. O., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 17-CV-521-JFJ |
| v. | ) |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Shawnette L. O. seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

For reasons explained below, the Court reverses the Commissioner's decision denying benefits and remands for further proceedings based on the ALJ's failure to evaluate a treating physician's medical source statement pertaining to the relevant period. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.      Standard of Review**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Hamlin v. Barnhart*,

365 F.3d 1208, 1214 (10th Cir. 2004) (quotations omitted). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1261 (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands so long as it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Procedural History and the ALJ's Decision

Plaintiff, then a 53-year-old female, applied for Title II benefits on September 29, 2014, alleging a disability onset date of August 1, 2008. R. 20. Plaintiff claimed that she was unable to work due to disorders including fibromyalgia and arthritis. R. 178. Plaintiff's claim for benefits was denied initially on October 23, 2014, and on reconsideration on January 23, 2015. R. 73-96. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ conducted the hearing on May 25, 2016. R. 20, 34-66. The ALJ issued a decision on June 21, 2016, denying benefits and finding Plaintiff not disabled because she was able to perform other work. R. 20-29. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act on June 30, 2014, and that she had not engaged in substantial gainful activity during the period from her alleged onset date of August 1, 2008 through her date last insured of June 30, 2014. R. 22. The ALJ found that Plaintiff had the following severe impairments: fibromyalgia; arthritis (shoulders, hips, and pelvis); degenerative disc disease of the lumbar spine; affective disorder; and anxiety disorder. *Id.* The ALJ also found non-severe impairments of cervical degenerative disc disease and mild coronary artery disease, as well as non-medically determinable migraine

2

headaches.  R. 22-23.  At step three, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments of such severity to result in listing-level impairments.  R. 23.

The ALJ summarized Plaintiff's testimony as follows:  Plaintiff lives with her husband, who receives long-term disability payments.  She completed the 11th grade and has never obtained a GED.  She has a driver's license.  Her fibromyalgia medication causes anxiety and depression.  She can walk two to three blocks before needing to rest.  R. 25; *see* R. 37-57.  The ALJ also noted a Third-Party Adult Function Report from Plaintiff's daughter, submitted on October 13, 2014.  R. 27, 202-209.  The ALJ gave this report some weight, as it showed Plaintiff could perform with the RFC the ALJ identified.  R. 27.

With respect to the objective medical evidence in the record, the ALJ noted chest x-rays dated October 17, 2013, which showed no significant abnormalities (R. 347), and cervical spine x-rays dated February 25, 2014, showing early degenerative changes in the mid-cervical spine (R. 348).  Emergency room records dated July 31, 2014, revealed Plaintiff presented with complaints of flank pain and possible kidney stone.  R. 270.  A CT scan of the abdomen and pelvis revealed no renal, uretal, or bladder calculi.  R. 271-272.  On August 11, 2014, Plaintiff's treating physician Terrence Williams, D.O., ordered a CT angiogram of the pelvis and bilateral lower extremities, which revealed mild fusiform ectasia of the visualized infrarenal abdominal aorta; moderate predominately noncalcified plaque of the visualized infrarenal abdominal aorta; and other scattered mild multifocal atherosclerotic disease in the lower abdomen, pelvis, and bilateral lower extremities, but with inline three vessel runoff to the feet and no significant stenosis.  R. 350-351.

The ALJ noted that Dr. Williams evaluated Plaintiff on May 7, 2015, for complaints of moderate to severe back pain.  R. 380.  Upon physical examination, Dr. Williams noted tenderness and pain with the range of motion in the cervical spine; tenderness and moderate pain with range

3

of motion in the lumbar spine; and tenderness and moderate pain with range of motion in the right knee. R. 382. An MRI scan of the cervical spine dated May 13, 2015, revealed degenerative disc disease and osteoarthritis seen in the cervical spine. R. 390-391. Dr. Williams evaluated Plaintiff on November 4, 2015, for complaints of back pain. R. 374. Examination revealed tenderness in the cervical spine with mild pain in range of motion. R. 375. Dr. Williams evaluated Plaintiff on February 4, 2016, for complaints of moderate back pain and allergies. R. 370. Examination showed muscle spasm, and range of motion showed moderate pain with motion. R. 372. On May 27, 2015, Eric Sherburn, M.D., examined Plaintiff and prepared a consultation report pertaining to complaints of right arm pain, numbness, and weakness. R. 404-406. Dr. Sherburn noted a six- to eight-month history of progressive paresthesias followed by pain and now weakness in the right upper extremity. R. 404. Pain medication and chiropractic treatment had not improved her symptoms. *Id.*

With respect to the medical opinion evidence, the ALJ gave great weight to the state agency opinions of Luther Woodcock, M.D., and Claire Horn, M.D. R. 25-26. They opined that Plaintiff had the RFC for light exertion work; should never climb ladders, ropes, and scaffolds; and should only occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. R. 78-79, 91-93. The ALJ gave their opinions great weight, finding that they were consistent with the totality of the objective medical evidence of record.[1]

After evaluating the objective medical and psychological evidence, Plaintiff's statements, Plaintiff's daughter's statements, and the agency medical and psychological assessments, the ALJ

---

[1] The ALJ also summarized objective and opinion psychological evidence in the record. However, Plaintiff makes no allegation of error regarding her mental disorders or their resulting limitations. Because the ALJ's decision regarding these impairments is not at issue, the Court will not address them.

4

concluded that Plaintiff has the residual function capacity ("RFC") to perform a reduced range of light work through the date last insured as follows:

> No lifting or carrying more than 20 pounds occasionally and 10 pounds frequently; pushing/pulling limitations are consistent with lifting and carrying limitations; stand/walk 6 hours out of an 8-hour day; and sit 6-8 hours in an 8-hour day. She cannot climb ladders, ropes, or scaffolds. She can occasionally climb stairs, bend or stoop, kneel, crouch, and crawl. She is limited to simple and routine and multistep tasks and some complex tasks allowing for semi-skilled work; superficial contact with co-workers or supervisors; and no contact with the public.

R. 24. The ALJ found that Plaintiff has past relevant work as a Combination Welder (medium exertion; skilled; SVP 6; DOT 819.384-010); however, claimant was unable to perform this work through the date last insured. R. 27. Based on the testimony of a vocational expert ("VE"), the ALJ found at step five that Plaintiff could perform other light or sedentary work, such as a Small Product Assembler, Marker, and Racker. R. 28. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled at any time from August 1, 2008, the alleged onset date, through June 30, 2014, the date last insured. *Id.*

## III. Issues

Plaintiff raises two points of error on appeal: (1) the ALJ failed to properly evaluate the medical opinions of Plaintiff's treating physician, Dr. Williams, pertaining to the period prior to her date last insured; and (2) the ALJ failed to discuss uncontroverted and/or significantly probative evidence from Dr. Williams' treatment notes that conflicted with the ALJ's findings. ECF No. 15. The Court finds that the ALJ committed reversible error based on his failure to evaluate Dr. Williams' medical source statement detailing Plaintiff's physical limitations as of April 22, 2014 (her last visit prior to her date last insured). *See* R. 409-413. The Court does not reach the second allegation of error.

5

## IV. Analysis – Treating Physician's Opinions

Plaintiff argues that the ALJ committed reversible error by failing to address or evaluate a medical source statement submitted by Plaintiff's treating physician, Dr. Williams. In June 2016, Dr. Williams completed a medical source statement addressing Plaintiff's physical limitations that existed as of April 22, 2014, the date of Plaintiff's last visit to Dr. Williams prior to her date last insured of June 30, 2014. R. 409-413, R. 294-296. In this assessment, Dr. Williams opined that Plaintiff would need to elevate both legs to waist level while sitting to minimize pain; could sit for thirty minutes at a time for a total of one hour in an eight-hour work day; could stand or walk for less than fifteen minutes at a time for a total of one hour in an eight-hour work day; would need additional breaks than those normally provided and would need to lie down or recline for four hours in an eight-hour work day; could lift and carry up to ten pounds occasionally; could rarely or never balance or stoop; could occasionally perform forward flexion and bilateral rotation, but rarely or never backward flexion; and could occasionally reach, handle, and finger with each of her upper extremities. R. 409-413. Dr. Williams noted that his assessment was premised upon his diagnoses of diffuse musculoskeletal pain, fibromyalgia, chronic neck and back pain, and degenerative changes of the cervical spine. R. 413.[2]

Plaintiff contends the ALJ was required to evaluate Dr. Williams' medical source statement pertaining to the period prior to Plaintiff's date of last insured. Plaintiff is correct. When a medical opinion comes from a treating source, the ALJ must give it controlling weight if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not

---

[2] Dr. Williams also completed a second medical source statement in June 2016, which pertains to Plaintiff's current limitations. R. 419-423. In that assessment, Dr. Williams opined that Plaintiff was subject to even greater physical limitations in 2016 than in April 2014, and she had experienced no improvements. *Id.* The ALJ also did not address this medical source statement in the decision.

inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If the ALJ finds the opinion is deficient in either respect, then the ALJ must consider several factors in determining the weight to be given to the medical opinion. *See* 20 C.F.R. § 404.1527(c). Those factors include: (1) the examining relationship; (2) the treatment relationship; (3) the length of the treatment relationship and the frequency of examinations; (4) the nature and extent of the treatment relationship; (5) how well the opinion is supported; (6) its consistency with other evidence; and (7) whether the opinion is from a specialist. *Id.* If, after considering the relevant factors, the ALJ rejects the opinion completely, "he must then give specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301 (quotations omitted). In all cases, the ALJ must give "good reasons" for the weight assigned to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); *Watkins*, 350 F.3d at 1301.

Here, the ALJ failed to discuss, evaluate, or weigh Dr. Williams' opinions regarding Plaintiff's functional limitations as he was required to do. This is reversible error. *Watkins*, 350 F.3d at 1301.

Moreover, as Plaintiff points out, the ALJ's error is not harmless. Harmless error doctrine applies only in the "exceptional circumstance" where the court could confidently say that no reasonable administrative factfinder could have resolved the factual matter in any other way. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). To the extent any harmless-error determination "rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action." *Id.* Here, Dr. Williams' opinion reflects limitations beyond those contained in the RFC. If the ALJ were to adopt some or all of those limitations, such as the exertional, reaching, handling, and fingering restrictions, then all three jobs relied upon by the ALJ at step five would likely be precluded. For example, according to the DOT all three jobs require constant reaching and handling. *See* DOT 739.687-030, Small Product

7

Assembler (constant reaching, handling, and fingering); DOT 209.587-030, Map Clerk/Marker (constant reaching and handling); DOT 524.687-018, Racker (constant reaching and handling). However, Dr. Williams opined that Plaintiff was limited to occasional bilateral reaching, handling, and fingering. Indeed, the VE testified that if Plaintiff were limited to occasional overhead reaching – a limitation that Dr. Williams suggested – then it would eliminate all three of the jobs the ALJ identified at step five. *See* R. 61. Additionally, neither the VE nor the ALJ addressed the vocational impact of other exertional limitations Dr. Williams proposed, such as the need to elevate the legs, lie down, or recline for several hours per day.

In her response, the Commissioner concedes that the ALJ's decision omits any discussion of Dr. Williams' medical source statement. However, the Commissioner offers several grounds to attempt to justify the omission. First, the Commissioner contends that Dr. Williams' opinions are not supported by his examination findings. The Court disagrees. Dr. Williams' examination of Plaintiff in April 2014 revealed posterior tenderness; thoracic and lumbosacral paravertebral muscle spasm; tenderness in cervical, thoracic, and lumbar spine; bilateral shoulder tenderness; bilateral elbow tenderness; bilateral hip tenderness; bilateral sacroiliac tenderness; and bilateral knee tenderness. R. 294-296. Dr. Williams' treatment notes from 2010 and 2013 to 2014 also support findings of spinal tenderness as well as muscle spasms and reduced ranges of motion.[3] *See* R. 296, 300, 307, 311, 315, 333, 335, 337. More importantly, even if Dr. Williams' examination notes did not fully support his opinions, the ALJ failed to state so. The ALJ did not even discuss these examination notes, which date to the relevant time period. While the Commissioner correctly

---

[3] To the extent the Commissioner argues Dr. Williams' examination notes do not reveal specific limitations as to gait, strength, or manipulative abilities, such findings are not necessarily inconsistent with the symptoms of fibromyalgia. *See Moore v. Barnhart*, 114 F. App'x 983, 991-92 (10th Cir. 2004) (noting that patients with fibromyalgia usually appear healthy, with joints appearing normal, no objective joint swelling, and normal muscle strength, sensory functions, and reflexes despite the patient's complaints of tenderness and numbness).

points out that an ALJ may reasonably discount a treating physician's opinion based on the factors articulated in the regulations, including a lack of supportive objective medical evidence, the Court cannot presume the ALJ properly considered those factors where he did not discuss them at all. *Watkins*, 350 F.3d at 1300-01; *Wade v. Astrue*, 268 F. App'x 704, 706 (10th Cir. 2008).

Second, the Commissioner argues that Dr. Williams' opinions are less meaningful because Dr. Williams did not see Plaintiff in 2011 or 2012 for her musculoskeletal disorders. Even if the Commissioner is correct, it is undisputed that Dr. Williams treated Plaintiff for those conditions in 2010 and 2013-2014, and the ALJ did not himself discount Dr. Williams' opinions based on his intermittent treatment of Plaintiff. To insert such an explanation now would represent a post-hoc justification, in which this Court may not engage.[4] Third, the Commissioner argues the ALJ appropriately chose to give "great weight" to the opinions of agency reviewers Drs. Woodcock and Horn. Even if true, this determination does not itself explain the ALJ's decision to ignore Dr. Williams' opinions.

Finally, the Commissioner contends the ALJ was permitted to disregard Dr. Williams' opinions, because they represent a retrospective diagnosis without evidence of actual disability. The Court is not persuaded. In April 2014, Dr. Williams was treating Plaintiff for her

---

[4] The Commissioner additionally contends in a footnote that the ALJ was not required to give deference to Dr. Williams' opinion, because the relevant guidance on giving such deference to treating source medical opinions, Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, was rescinded effective March 27, 2017. This contention fails for two reasons. First, the ALJ rendered his decision on June 21, 2016, when SSR 96-2p was still in effect. *See Newbold v. Colvin*, 718 F.3d 1257, 1261 n.2 (10th Cir. 2013) ("We refer to and apply the versions of those regulations in effect at the time of the ALJ's decision.") (quotations omitted). Second, the current version of 20 C.F.R. § 404.1527(c), which applies to claims filed before March 27, 2017, provides that an ALJ treating source's opinion is generally entitled to greater weight, and is entitled to controlling weight if well-supported and not inconsistent with the other substantial evidence in the record. In any event, the Court has no basis for reviewing the weight given to Dr. Williams' medical source statement, as the ALJ did not even mention it, much less provide "good reasons" for disregarding it. *See* 20 C.F.R. 404.1527(c)(2).

musculoskeletal disorders, even though he prepared his medical source statement in June 2016. *See* R. 294-296, 409-413. Dr. Williams noted Plaintiff's diagnosis of fibromyalgia in April 2014, and his April 2014 treatment notes are not plainly inconsistent with his opinions as to her physical limitations at that time. *See id. Cf. Adams v. Chater*, 93 F.3d 712, 714-715 (10th Cir. 1996) (treating physician's retrospective diagnosis of claimant's condition, dating to a time period prior to physician's first examination of claimant, is insufficient without evidence of actual disability); *Potter v. Sec'y of HHS*, 905 F.2d 1346, 1349 (10th Cir. 1990) (retrospective diagnosis of claimant's past symptoms as multiple sclerosis, without evidence of actual disability, was insufficient).

Essentially, the Commissioner asks the Court to adopt its post-hoc justifications for the ALJ's failure to address Dr. Williams' opinions. However, "this court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). The Court must remand, because it cannot meaningfully review the ALJ's determination absent findings explaining the weight given to the treating physician's opinion. *See Watkins,* 350 F.3d at 1301.

## V.   Other Allegations of Error Related to Physical Limitations

Based on the Court's remand, the Court does not address the remaining claim of error raised by Plaintiff, which relates to the ALJ's failure to address many of Dr. Williams' office notes from visits in 2010, 2013, and 2014. *See Watkins*, 350 F.3d at 1299 ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of the case on remand."). However, the Court notes that it may be necessary on remand for the ALJ to address Dr. Williams' office notes from that period, particularly with regard to their consistency with Dr. Williams' medical source statement relating to that time.

## VI. Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for further proceedings. On remand, the ALJ should consider the relevant opinions from Plaintiff's treating physicians, including Dr. Williams, and explain the reasons for the weight given to each opinion.

**SO ORDERED** this 12th day of March, 2019.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**